IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

PATRICIA TURNER,

    Plaintiff,

v.                                                                         No. 09-1024

YOUNG TOUCHSTONE CO.,

    Defendant.

_____

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
_____

*INTRODUCTION AND PROCEDURAL BACKGROUND*

        The Plaintiff, Patricia Turner, initiated this action against the Defendant, Young Touchstone Company ("Young Touchstone"), on January 26, 2009 alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* Before the Court is the Defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

*STANDARD OF REVIEW*

        Rule 56 provides in pertinent part that a ". . . judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *see* Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988). "A fact is 'material' and precludes grant of summary judgment if proof of that fact would

have the effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect application of [an] appropriate principle of law to the rights and obligations of the parties." Midwest Media Prop., L.L.C. v. Symmes Twp, Ohio, 503 F.3d 456, 469 (6th Cir. 2007), *reh'g en banc denied* 512 F.3d 338 (6th Cir. 2008) (quoting Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)). A fact may not be material even if true. Griffin v. Hardrick, 604 F.3d 949, 956 (6th Cir. 2010).

On a Rule 56 motion, "[t]he district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." American Civil Liberties Union of Ky. v. Grayson County, Ky., 591 F.3d 837, 843 (6th Cir. 2010), *reh'g denied*, 605 F.3d 426 (6th Cir. 2010) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc., 588 F.3d 908, 915 (6th Cir. 2009), *reh'g & reh'g en banc denied*, (Feb. 18, 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact." Climer v. Dillenbeck, No. 08-11074, 2009 WL 270153, at *3 (E.D. Mich. Feb. 3, 2009) (citing Anderson, 477 U.S. at 255).

*FACTS*

As an initial matter, the Court notes that many of the Plaintiff's responses to the Defendant's statement of facts are inadequate. In response to facts numbered 12, 15, 17, 25 and 33, Turner states

only that she disputes the facts asserted therein. Without more specificity or evidence to the contrary, the Court cannot construe this type of response as a legitimate refutation of the Defendant's assertions. At the summary judgment stage, the nonmoving party must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. A mere denial of the Defendant's asserted facts, without more, does not create a genuine issue of material fact. Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356 ("When the moving party has carried its burden under Rule 56©, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Moreover, her responses to statement of fact numbers 3, 9, 13, 22, 27, 28, 29, 31, 32 and 34 either dispute or concede the proposed fact and then add a qualifying statement. For example, Turner responded to the Young Touchstone's statement of undisputed fact numbered 3 thusly: "Plaintiff does not dispute paragraph 3 of Defendant's Statement of Facts for the purpose of Defendant's Motion for Summary Judgment. However, Plaintiff has also performed the duties of her former supervisor but without being given the title or pay for that job." (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. at 1.)

>Rule 56 provides that
>
>[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2). "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex,

477 U.S. at 324, 106 S. Ct. at 2553 (internal quotation marks omitted).  Faced with a properly supported Rule 56 motion, a plaintiff cannot succeed "without any significant probative evidence tending to support the complaint."  Anderson, 477 U.S. at 249, 106 S. Ct. at 2510 (citation and internal quotation marks omitted).

The Plaintiff attached to her responsive brief seventy-eight pages of exhibits.[1]  While evidence supporting her assertions with respect to the Defendant's statement of facts perhaps lies somewhere within those seventy-eight pages, it is not the duty of the Court to plod through them until such support is found.  Rather, that is the job of her attorney.  *See* Guarino v. Brookfield Twp. Trs., 980 F.2d 399, 405 (6th Cir. 1992) ("Nothing in either the [Federal] Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record."); Gillan v. O'Connor, No. 2:06-0038, 2007 WL 2509674, at *4 (M.D. Tenn. Aug. 30, 2007) ("[a] district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim.  Rule 56 contemplates a limited marshaling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial."); Cox v. Dubois, 16 F. Supp. 2d 861, 865 (S.D. Ohio 1998) ("That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.").

---

[1]These seventy-eight pages actually consist of Exhibits A through J but were filed as one document, making it extremely difficult and time-consuming for the Court and its staff to locate individual documents.  Counsel for Plaintiff is advised, in future filings, to file each exhibit as a separate document and label each on the docket with the number of the exhibit (i.e, Exhibit 1 or Exhibit A, etc.) and a brief identifying description (for instance, Deposition of Plaintiff).

Accordingly, the facts to which Turner made only bald assertions of dispute are deemed admitted by the Court. In addition, statements by the Plaintiff with no citation to the record in response to properly supported facts will not be considered.[2] *See* Perkins v. Scwappach, Civ. Action No. 07-2124, 2010 WL 1558697, at *1 n.1 (E.D. Pa. Apr. 16, 2010) (nonmovant's failure to cite to the record in disputing the movant's statement of facts on summary judgment resulted in finding that the movant's facts were undisputed); Royal Am. Managers, Inc. v. Int'l Surplus Lines Ins. Co., 760 F. Supp. 788, 791 (W.D. Mo. 1991) (same).

With the foregoing in mind, the Court now turns to the following material facts, which are undisputed for purposes of the instant motion unless otherwise indicated. Young Touchstone, whose principal place of business is Wilmerding, Pennsylvania, is a manufacturer of radiators and cooling systems for train locomotives and earth movers. (Aff. of Andrew Deakins[3] ("Deakins Aff.") ¶ 2.) The company operates facilities in Jackson and Lexington, Tennessee. (Deakins Aff. ¶ 2.) Turner began her employment with Young Touchstone on or about February 20, 2000. (Deakins Aff. ¶ 6.) She was hired for no definite term or duration and was at all times an at-will employee. (Deakins Aff. ¶ 6.)

Since on or about August 16, 2003, the Plaintiff held the hourly paid position of team leader

---

[2]Moreover, the Plaintiff also includes legal argument in some of her responses to Young Touchstone's statement of facts. Such responses are not the appropriate platform for argument, however, which should be presented in her brief. Portis v. City of Chicago, 510 F. Supp. 2d 461, 464 (N.D. Ill. 2007). In responses to a Rule 56 movant's statement of facts, "the only question is whether the fact asserted is contested." Id.

[3]Deakins is Young Touchstone's director of human resources and safety. (Deakins Aff. ¶ 1.)

on the first shift in the fin and tube department.  (Deakins Aff. ¶ 7; Dep. of Patricia Ann Turner ("Turner Dep.") at 20.)  Her primary duties included assigning jobs to associates, scanning work orders, ensuring scrap and production reports were completed, making sure associates had what they needed to perform their work safely and effectively, and reporting policy violations to management. (Turner Dep. at 41.)

On May 9, 2007, Richard Freeman, area coordinator for the department, was removed from that position after two years and reassigned to the role of inventory analyst.  (Deakins Aff. ¶ 8; Turner Dep., Ex. 1; Aff. of Geoffrey Smith ("Smith Aff.") ¶ 3; Pl's Resp. in Opp'n to Def.'s Mot. for Summ. J., Ex. A ("Defendant's EEOC Position Stmt.") at 2.)  According to Smith, general manager and vice president of Young Touchstone, it was his determination, based on low productivity, quality issues and poor discipline, that Freeman was not doing a satisfactory job as area coordinator, an assessment agreed with by then plant manager Ken Rogers.  (Smith Aff. ¶ 3; Aff. of Kenneth Gilbert[4] ("Gilbert Aff.") ¶ 2.)  Gilbert was assigned to assist with the transition, including providing leadership in the fin and tube department and finding a replacement for Freeman.  (Turner Dep., Ex. 1; Gilbert Aff. ¶ 2.)

The manager to whom the area coordinator reports is primarily responsible for filling the position.  (Deakins Aff. ¶ 10.)  On the first shift, where there are up to eight area coordinators for each of the departments, it was typically the plant manager who determined who was placed in those positions.  (Deakins Aff. ¶ 10.)  However, Smith stated in his affidavit that he assembled a

---

[4]At the time the incidents occurred from which this action arose, Gilbert was director of quality performance systems at Young Touchstone.  (Gilbert Aff. ¶ 2.)

6

management team consisting of Rogers; Matt Warnick, design engineer manager[5]; Jay Korth, director of engineering; and Gilbert to determine who would be placed in the area coordinator position.[6]  (Smith Aff. ¶ 4.)  He did not think it appropriate in this instance to leave the decision exclusively to Rogers, whose own continued employment at Young Touchstone was in the spring of 2007 tenuous based on Smith's lack of confidence in the plant manager.  (Smith Aff. ¶ 4; Deakins Aff. ¶ 10.)

Several employees expressed interest in the area coordinator position and were interviewed, including the Plaintiff, Mike Ruth, Chris Ross, Chuck Landers, Karl Brown, Lisa Ditto, Jerry Mann and Tony Reynolds.  (Gilbert Aff. ¶ 3[7]; Aff. of Jay S. Korth ("Korth Aff.") ¶ 3.)  Reynolds later

---

[5]Warnick has held the position of plant manager since July 5, 2007.  (Aff. of Matthew Warnick ("Warnick Aff.") ¶ 1.)

[6]Turner disputes this fact, pointing to Deakins' deposition testimony that Rogers told him he was the person who assembled a team to fill the position.  The testimony to which she refers is as follows:

Q:  . . . [B]efore the selection was made, were you consulted in any way or asked your opinion in any way?

A:  Before the selection process, Ken Rogers let me know, I believe, just in a conversation how he wanted to go about this process.  I had no issues with it.  That's management's discretion.  It's up to management[']s discretion how -- if they want to fill a position.  The plant manager especially.  He consulted with me.  And after Ken had been dismissed, I was brought back into how the process was going to be conducted from that point forward by Geoff Smith.

(Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Ex. I ("Deakins Dep.") at 15.)  The passage does not, in the Court's view, serve as clear evidentiary support for the Plaintiff's assertion.

[7]According to Gilbert's affidavit, Tameka Walker was also interviewed for the area coordinator position.  (Gilbert Aff. ¶ 3.)  It is unclear why she was not listed in the Defendant's

7

withdrew his application, citing personal reasons. (Gilbert Aff. ¶ 3.) The initial round of interviews was conducted by members of the management team. (Korth Aff. ¶ 3.) The interviews focused on topics including company policies, discipline, product knowledge and computer literacy. (Warnick Aff. ¶ 3.) The team sought to fill the position with an individual who could turn around the department, which was considered failing in terms of productivity, quality and discipline. (Warnick Aff. ¶ 4; Turner Dep. at 28-31.) Following the first round of interviews, conducted between April 30 and May 9, 2007, the management team agreed that the two best candidates were Ross and Ruth. (Gilbert Aff. ¶ 5; Warnick Aff. ¶ 3.)

On or about May 11, 2007, Rogers' employment with Young Touchstone ended. (Smith Aff. ¶ 5.) Thereafter, Smith met with the management team, where it was decided that Ross and Ruth would be subjected to a second round of interviews. (Gilbert Aff. ¶ 6; Smith Aff. ¶6.) Gilbert, who was directly involved in the fin and tube department on a daily basis, suggested that Turner be included in the second round. (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J., Ex. H ("Smith Dep.") at 21-22.) The three candidates were interviewed on May 21, 2007 in Smith's office. (Smith Aff. ¶ 7; Smith Dep. at 23.)

Ross was a team leader in another area but, according to Gilbert, had a proven record of accomplishment in meeting production requirements and a good knowledge of the fin and tube department. (Gilbert Aff. ¶ 8.) Ruth was an area coordinator over the fabrication department and had no fin and tube experience. (Gilbert Aff. ¶ 8.)

---

statement of undisputed facts. In any case, the Plaintiff does not dispute that the persons listed in the statement of facts were interviewed.

Smith related that the team considered the fact that Turner had performed the area coordinator job in deciding whom to promote. (Smith Dep. at 43.) He could not recall anything negative about her execution of the position's duties. (Smith Dep. at 43.) She was "holding down the fort" as to day-to-day activities, he remembered, but there were also long-term expectations to be considered, including creation of new ideas and improvements in process, productivity and systems. (Smith Dep. at 42-43.)

It was Gilbert's opinion, however, that Turner had not shown the assertive leadership necessary to turn the department around. (Gilbert Aff. ¶ 8.) Warnick stated in his affidavit that Turner was removed from consideration "due in part to her interview because her responses were not as solid and unambiguous as those of Ross and Ruth, [and also because the team] thought [they] needed someone from the outside of the department to come in and enforce discipline within a department widely viewed within the plant as being out of control." (Warnick Aff. ¶ 7.) He added that "[t]he team was concerned that during Turner's long tenure as a lead person, as well as the short tenure filling in on some of the [a]rea [c]oordinator day to day duties, [they] did not see any efforts from her to make improvements in the department in regards to discipline, quality, or production." (Warnick Aff. ¶ 7.) Warnick "did not think that the fact that the department did not collapse under her care was a legitimate reason to award her with the [a]rea [c]oordinator position." (Warnick Aff. ¶ 7.) Korth recalled that Ruth and Ross "gave excellent interviews and clearly distanced themselves from" the Plaintiff. (Korth Aff. ¶ 4.) He also stated that

> [o]ne thing that was considered both during the first and second round of interviews was current performance of the [f]in and [t]ube department. The department was not meeting expectations and was somewhat out of control. We felt that this was

9

> partially due to the inability of the [a]rea [c]oordinator to lead the group, but we also saw the floor lead personnel, of whom Pat Turner was a member, were also not looking to make changes even when given the opportunity. I observed that simple processes such as "staking a core"[8] were not being followed and it appeared that the instructions given to workers by management were not being enforced by the leads, especially during first shift. Workers would also be seen engaging in group conversations during the day, especially during the last hour of a shift. This was being done in direct view of the floor leads without fear of reprimand.

(Korth Aff. ¶ 5.) The team believed a change in culture was required and, therefore, it was best to promote someone from outside the department to drive that culture change. (Korth Aff. ¶ 6.) The team did not review performance evaluations of the candidates. (Korth Aff. ¶ 3; Gilbert Aff. ¶ 4; Warnick Aff. ¶ 8; Smith Aff. ¶ 10.)

The members of the team unanimously agreed to offer the position to Ross on May 23, 2007, and he accepted. (Gilbert Aff. ¶ 7; Smith Aff. ¶¶ 8, 9.) Ross took over the position on May 29, 2007. (Deakins Aff. ¶ 9.) Smith advised the Plaintiff of the team's decision and encouraged her to apply for other positions as they became available. (Smith Aff. ¶ 9; Turner Dep. at 77.) Turner did not seek another area coordinator position at Young Touchstone. (Turner Dep. at 58.) In August 2007, Reynolds was awarded the area coordinator position on the second shift. (Turner Dep. at 79-80.)

The Plaintiff believed she was more qualified than Ross because she was already working in the fin and tube department and performing the duties of area coordinator. (Turner Dep. at 32-33.) She was not of the opinion that she was more qualified than Reynolds but complained that the

---

[8]According to Young Touchstone's position statement submitted to the EEOC, "staking a core" is "an initial step in the production process necessary to completing a finished core in the fin and tube department." (Defendant's EEOC Position Stmt. at 3 n.1.)

open position he filled was not announced. (Turner Dep. at 82.) Company policy did not require that job openings such as area coordinator be posted or put up for bid, or that interviews be conducted. (Deakins Aff. ¶ 10.)

Prior to working for Young Touchstone, the Plaintiff had no experience supervising, disciplining or terminating employees. (Turner Dep. at 54.) Neither did she have experience administering discipline to employees while working for the Defendant. (Turner Dep. at 55.) In her deposition, Turner could not explain the purpose of issuing a written warning or the "dos and don'ts" of administering such discipline. (Turner Dep. at 60-62.) Since Smith became general manager of Young Touchstone in 2005, no woman had been employed as an area coordinator. (Smith Dep. at 22.)

## *ARGUMENTS OF THE PARTIES AND ANALYSIS*

Turner has averred herein that she was not promoted to either of the area coordinator positions because she was female. Title VII prohibits intentional acts of discrimination in the workplace based on race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1). Discrimination based on disparate treatment, as has been alleged in this case, "occur[s] when an employer has treated a particular person less favorably than others because of a protected trait." Ricci v. DeStefano, ___ U.S. ___, 129 S. Ct. 2658, 2672, 174 L. Ed. 2d 490 (2009) (citation and internal quotation marks omitted). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153, 120 S. Ct. 2097, 2111, 147 L. Ed. 2d 105 (2000).

At the summary judgment stage, a plaintiff must adduce either direct or circumstantial evidence in order to prevail. Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009), *reh'g & reh'g en banc denied*, (Nov. 25, 2009). Turner bases her claim on the latter, which invokes the McDonnell Douglas/Burdine burden-shifting paradigm. *See* Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 1093, 67 L. Ed. 2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824, 36 L. Ed. 2d 668 (1973); Upshaw, 576 F.3d at 584. Under this analysis, the plaintiff must first establish a prima facie case of gender discrimination. Upshaw, 576 F.3d at 584. If she is successful, the burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for its action. Id. In the event the employer carries its burden, it is incumbent upon the plaintiff to show by a preponderance of the evidence that the reason proffered by the employer was pretextual. Id. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148, 120 S. Ct. at 2109. Throughout the McDonnell Douglas/Burdine analysis, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Upshaw, 576 F.3d at 584 (citation and quotation marks omitted).

In order to demonstrate a prima facie case of gender discrimination in the failure-to-promote context, the plaintiff must show that "(1) she is a member of a protected class; (2) she applied for and was qualified for a promotion; (3) she was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the

12

job at the time plaintiff's request for the promotion was denied." White v. Columbus Metro. Hous. Auth., 429 F.3d 232, 240 (6th Cir. 2005) (citing Nguyen v. City of Cleveland, 229 F.3d 559, 562-63 (6th Cir. 2000)). The burden of establishing a prima facie case of discrimination is not an onerous one. Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660 (6th Cir. 2000), *reh'g & suggestion for reh'g en banc denied*, (May 4, 2000).

In Dews v. A. B. Dick Co., 231 F.3d 1016 (6th Cir. 2000), *reh'g & suggestion for reh'g en banc denied*, (Jan. 25, 2001), the Sixth Circuit held that "in failure to promote cases a plaintiff does not have to establish that [s]he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion." Dews, 231 F.3d at 1022. The Plaintiff relies on Dews to salvage her claim of discrimination in connection with the promotion of Reynolds to a position for which it is undisputed she did not apply. However, Turner has made no effort to establish, as she must, that she and Reynolds were similarly qualified. *See* White, 429 F.3d at 240, *supra.*

According to Turner's deposition, Reynolds was at the time of his promotion a team leader on the second shift, on which there was only one area coordinator compared to eight on the first shift. (Turner Dep. at 81-82; Smith Dep. at 92.) Thus, unlike the first shift, the second shift's area coordinator was responsible for all departments running on that shift. (Turner Dep. at 81; Smith Dep. at 92.) In July 2007, Eric Grimes was promoted from the position to superintendent of the second shift. (Defendant's EEOC Position Stmt. at 3.) Grimes requested that Warnick, who by that time was plant manager, permit him to promote Reynolds to his former position, which was granted. (Deakins Dep. at 126; Defendant's EEOC Position Stmt. at 4.) While the Plaintiff concedes she was

13

not more qualified than Reynolds for the post (Turner Dep. at 82), she has neither asserted nor presented any evidence that she had similar qualifications.[9]  *See* White, 429 F.3d at 240, *supra.*

The Defendant does not directly challenge Turner's ability to demonstrate a prima facie case with respect to the promotion of Ross, but, rather, focuses its argument on the requirement that she show pretext.  *See* Ladd v. Grand Trunk W. R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009) (court need not address prima facie issue where plaintiff has failed to establish pretext).  Thus, assuming, *arguendo*, that the Plaintiff could show a prima facie case of discrimination, the burden of production shifts to the Defendant to offer a legitimate, nondiscriminatory reason for not promoting her to the open position.  *See* Upshaw, 576 F.3d at 584, *supra*.  Young Touchstone identifies its nondiscriminatory reason as the desire on the part of the management team to bring in someone, preferably from a different department, who could provide the assertive leadership necessary to turn a troubled section around.  The fin and tube department's current management, the team believed, was part of the problem.

It is at this point incumbent upon the Plaintiff to establish that the proffered reason was a pretext for discrimination.  "[A] plaintiff will usually demonstrate pretext by showing that the employer's stated reason for the adverse employment action either (1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." Risch v. Royal Oak Police Dep't, 581 F.3d 383, 391 (6th Cir. 2009), *reh'g & reh'g en banc denied,* (Nov. 25, 2009)

---

[9]Indeed, the only claim Turner has made in connection with Reynolds is that the job opening he filled was not posted.  However, she has referred the Court to no portion of the record disputing Deakins' statement in his affidavit that there was no company policy requiring that every open position be posted or interviews conducted.  Nor has she cited to caselaw indicating that failure to announce an open position is in itself a violation of Title VII.

(citation and quotation marks omitted). "However, the plaintiff may also demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation." Id. (citation and quotation marks omitted). "Evidence that the plaintiff was more qualified than the successful applicant can in some circumstances be sufficient to raise a genuine issue of material fact that the employer's proffered explanation is pretextual." Id. (citation omitted). "[W]hether qualifications evidence will be sufficient to raise a question of fact as to pretext will depend on whether a plaintiff presents other evidence of discrimination. When the plaintiff offers other probative evidence of discrimination, that evidence, taken together with evidence that the plaintiff was as qualified as or better qualified than the successful applicant, might well result in the plaintiff's claim surviving summary judgment." Id. at 392 (internal citations and quotation marks omitted).

Taking as true Turner's position that she was as or more qualified for the position than Ross, she must present other evidence of discrimination. In that regard, the Plaintiff first submits that Ross was chosen even though his May 18, 2007 performance review noted that he "needs to improve on communicating with co-workers," while the only comment on Turner's last review, in March 2007, was that she did a good job. However, the Plaintiff, without equivocation, has not disputed the Defendant's statement of fact that the management team did not review the candidates' performance evaluations. Nor has she shown that the team members had knowledge of the reviews' contents. Evidence of which the employer was not aware can do little to "shed[] light on whether the employer's proffered reason for the employment action was its actual motivation." *See* Risch, 581

15

F.3d at 391, *supra.* Moreover, Turner's wholly unsupported and conclusory claims in her responsive brief that the team's failure to consider the performance reviews was "suspect" (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. at 20) and "so unusual that it casts doubt on the credibility of any asserted position of Defendant" (Pl.'s Resp. in Opp'n to Def.'s Mot. for Summ. J. at 24) is nothing more than mere speculation. *See* Talwar v. Catholic Healthcare Partners, 258 F. App'x 800, 806-07 (6th Cir. 2007), *cert. denied*, ___ U.S. ___, 129 S. Ct. 604, 172 L. Ed. 2d 463 (2008) (plaintiff's "conclusory and unsupported allegations, rooted in speculation, do not meet the burden" required to survive summary judgment). Without additional evidence of discrimination, the fact that Turner was as or better qualified is insufficient to demonstrate pretext and her claim as to Ross fails. *See* Risch, 581 F.3d at 391, *supra.*

Similarly, even if Turner had proven a prima facie case of discrimination with respect to Reynolds, she has offered nothing whatever to show Young Touchstone's failure to post or interview her for the second shift area coordinator position was a pretext for discrimination. *See* id. While it is true Reynolds was promoted with no job posting or interview after failing to advance to the second interview stage for the fin and tube department area coordinator position, none of the other unsuccessful applicants for the fin and tube job, most of whom were male, were made aware of or given the opportunity to interview for the second shift job either. The fact that Grimes wanted Reynolds, and no one else, for reasons other than his gender does not violate Title VII. The Plaintiff argues that her employer knew she was interested in working as an area coordinator based on her application for the first open position and that, therefore, it could be logically concluded the decision not to post the second was designed to avoid hiring her. Turner has offered no evidence to support

16

her theory, however, which would require more of a leap than this Court is willing to make, particularly in light of the lack of any indication that the Defendant knew she would be interested in another area coordinator position or any job on the second shift, or that Grimes knew who had been interviewed for the fin and tube opening. In addition, Turner's unsupported contention that Reynolds may have withdrawn his application for the first opening knowing he would be offered the second is wildly speculative, especially considering the change in personnel holding the positions of plant manager and second shift superintendent between the two events. As she has failed to establish pretext, the Plaintiff cannot overcome summary judgment.[10]  *See* id.

## *CONCLUSION*

---

[10]The Plaintiff also charges that the affidavits in support of the Defendant's motion for summary judgment, the employment records, EEOC position statement and depositions contain numerous contradictions, citing Reid v. Sears, Roebuck & Co., 790 F.2d 453 (6th Cir. 1986). In Reid, the Sixth Circuit held that "a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony." Reid, 790 F.2d at 460. The court went on to observe that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." Id. In a later opinion, the Sixth Circuit noted that "[t]he rule set forth in Reid is grounded in the sound proposition that a party should not be able to create a disputed issue of material fact where earlier testimony on that issue by the same party indicates that no such dispute exists. Reid and its progeny have thus barred the nonmoving party from avoiding summary judgment by simply filing an affidavit that directly contradicts that party's previous testimony." Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 907 (6th Cir. 2006), *reh'g denied* (Jun. 20, 2006).

Thus, the issue in Reid was exactly the opposite of that presented here. The case clearly dealt with a nonmovant's attempt to create an issue of material fact in response to a motion for summary judgment, not a movant's attempt to establish the absence of disputed facts in favor of a motion for summary judgment. The Plaintiff has cited to no case applying Reid to a situation such as that at bar. In any event, the Court finds that the so-called "contradictions" identified by Turner are in fact not and in many instances deal with asserted facts that are not material.

Based on the foregoing, the motion of Young Touchstone is GRANTED and this matter is dismissed in its entirety. The Clerk of Court is DIRECTED to enter judgment for the Defendant.

IT IS SO ORDERED this 24th day of June 2010.

                                         s/ J. DANIEL BREEN
                                         UNITED STATES DISTRICT JUDGE